UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

ISABELLA MARYANOVSKY,

        Petitioner,

v.　　　　　　　　　　　　　　　　　　Case No. 3:25-cv-1599-MMH-SJH

GARRETT RIPA, et al.,

        Respondents.
_____

## **ORDER**

### I. Status

Petitioner Isabella Maryanovsky, an immigration detainee, initiated this action through counsel by filing a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 (Doc. 1; Petition) on December 23, 2025. Maryanovsky subsequently filed an Emergency Motion for Temporary Restraining Order (Doc. 3; Motion). On January 5, 2026, the Court granted in part Maryanovsky's request for a temporary restraining order and enjoined Respondents from removing her from the Jacksonville Division of the Middle District of Florida through January 20, 2026. See Temporary Restraining Order (Doc. 4); Endorsed Order (Doc. 7). The Court held a status hearing on January 6, 2026, during which the parties agreed to extend the temporary restraining order

through January 27, 2026, and scheduled a preliminary injunction hearing for that same day. See Clerk's Minutes (Doc. 6).

The Court then notified the parties that it would consolidate the preliminary injunction hearing with an adjudication of the Petition on the merits. See Order (Doc. 13). Respondents filed a response to the Motion (Doc. 12; Response), as well as a supplemental response to the merits of the Petition (Doc. 14; Supplemental Response). Maryanovsky filed a counseled Reply (Doc. 18; Reply).

On January 27, 2026, the Court conducted a consolidated preliminary injunction and merits hearing, at which Maryanovsky was present. Finding good cause based on the arguments presented at the hearing, the Court extended the Temporary Restraining Order pending resolution of the outstanding Motion and the merits of the Petition and ordered supplemental briefing. See Clerk's Minutes (Doc. 21). Subsequently, both parties submitted supplemental briefing. See Respondents' Supplemental Brief (Doc. 25); Maryanovsky Supplemental Brief (Doc. 26). This case is ripe for review.[1]

---

[1] Following the hearing, counsel for Respondent Baker County Sheriff Scotty Rhoden appeared and responded on his behalf. See Notice of Appearance (Doc. 23); Sheriff Response (Doc. 24). In his response, Sheriff Rhoden asserts that he does not possess any records or information considering the lawfulness of Maryanovsky's detention, and Maryanovsky includes him in these proceedings only because he is her physical custodian. See generally Doc. 24. The Court acknowledges that although Sheriff Rhoden is the proper Respondent, see Rumsfeld v. Padilla, 542 U.S. 426, 435 (2004), United States Immigration and Customs Enforcement has the ultimate authority over Maryanovsky's custodial status.

## II. Background

Maryanovksy is a citizen of the former Union Soviet Socialist Republics and was born in the former Ukrainian Soviet Socialist Republic, present-day Ukraine. Petition at 5, 9; Response at 4. Maryanovsky lawfully entered the United States as a refugee in 1977, and she subsequently adjusted her status to a lawful permanent resident. Docs. 1-4 at 9; 12-1 at 5. On November 14, 1989, Maryanovsky was convicted in the state court of Ohio of aggravated arson. Docs. 1-4 at 9; 12-1 at 3. Because of her state criminal conviction, on August 17, 2006, she was charged as removable pursuant to 8 U.S.C. § 1227(a)(2)(A)(iii). Docs. 1-4 at 10; 20-1 at 3. An Immigration Law Judge subsequently released Maryanovsky from detention on bond. Docs. 1-4 at 10; 12-1 at 10.

Maryanovsky received a final order of removal on September 29, 2009, Docs. 1-4 at 11; 20-2 at 2, and on April 27, 2010, United States Immigration and Customs Enforcement (ICE) re-detained Maryanovsky to execute the final order of removal, Doc. 12-1 at 5. After its efforts to remove her failed, ICE released Maryanovsky on an Order of Supervision (OSUP) on June 3, 2010. Doc. 20-2 at 2–6. ICE issued a new OSUP to Maryanovsky on March 20, 2012. Doc. 20-3 at 2–5.

### III. Maryanovsky's Petition

Maryanovksy alleges that she has complied with all conditions of her OSUP since 2010. Petition at 8. She asserts that, nevertheless, ICE re-detained her on December 15, 2025, without providing her notice or an informal hearing. Id.

Maryanovsky now raises three claims for relief in her Petition. Id. at 10–12. As Count One, Maryanovsky alleges that the revocation of her OSUP violated due process because ICE failed to follow its own regulations, which require notice of the reasons for revocation and a prompt informal interview. Id. at 10–11. In Count Two, Maryanovsky argues that she is entitled to release under Zadvydas v. Davis, 533 U.S. 678 (2001), because there is no significant likelihood of her removal in the reasonably foreseeable future. Id. at 11. And as Count Three, Maryanovsky asserts that her detention is not authorized by statute because when the Department of Homeland Security (DHS) fails to comply with the regulatory framework governing supervision and re-detention, detention exceeds statutory authority and is unlawful. Id. at 12.

As relief, Maryanovsky asks the Court to direct her immediate release from ICE custody; direct DHS to reinstate her prior OSUP or impose appropriate conditions of release; enjoin Respondents from re-detaining her absent full compliance with governing regulations and constitutional requirements; and award attorney's fees and costs. Id. at 13.

4

### IV. Analysis

The Court first addresses Respondents' arguments that two statutory provisions—8 U.S.C. § 1252(g) and § 1252(b)(9)—deprive this Court of jurisdiction to adjudicate Maryanovsky's claims. See Response at 7–10. Because the Court rejects those arguments, the Court then addresses the merits of Maryanovsky's claims.

### a. 8 U.S.C. § 1252(g)

Section 1252(g) states in pertinent part that "no court shall have jurisdiction to hear any cause or claim by . . . any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter." 8 U.S.C. § 1252(g). "It is a 'discretion-protecting provision' designed to prevent the 'deconstruction, fragmentation, and hence prolongation of removal proceedings.'" Camarena v. Dir., Immigr. & Customs Enf't, 988 F.3d 1268, 1272 (11th Cir. 2021) (quoting Reno v. Am.-Arab Anti-Discrimination Comm., 525 U.S. 471, 487 (1999)). Nevertheless, the provision "does not cover 'the universe of deportation claims.'" Id. (quoting Reno, 525 U.S. at 482). Indeed, the Supreme Court has explained that section 1252(g) should be narrowly read to encompass only the "three discrete actions that the Attorney General may take: her decision or action to commence proceedings, adjudicate cases, or execute removal orders." Reno, 525 U.S. at 482 (internal quotation marks and

5

citation omitted). While "'many other decisions or actions' may be 'part of the deportation process,' only claims that arise from one of the covered actions are excluded from [court] review" by this section. Camarena, 988 F.3d at 1272.

Here, Maryanovsky is not attacking ICE's decision to commence removal proceedings, adjudicate her case, or execute an order of removal. The crux of Maryanovsky's claim is that ICE failed to comply with its regulations when it revoked her OSUP. The Eleventh Circuit has held that even where the statutory framework grants agency discretion, courts have jurisdiction to review whether an agency adhered to its regulations and procedures. See Kurapati v. U.S. Bureau of Citizenship & Immigr. Servs., 775 F.3d 1255, 1262 (11th Cir. 2014) (per curiam). Thus, the Court finds that § 1252(g) does not bar Maryanovsky's claims.

### b. 8 U.S.C. § 1252(b)(9)—the "Zipper Clause"

Under the "Zipper Clause," "[j]udicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter shall be available only in judicial review of a final order." 8 U.S.C. § 1252(b)(9). But "§ 1252(b)(9) 'does not present a jurisdictional bar' where those bringing suit 'are not asking for review of an order of removal,' 'the decision . . . to seek removal,' or 'the process by which . . . removability will be determined.'" Dep't of Homeland Sec. v.

6

Regents of the Univ. of Cal., 140 S. Ct. 1891, 1907 (2020) (quoting Jennings v. Rodriguez, 583 U.S. 281, 294–95 (2018)). The Eleventh Circuit has "clarified that the zipper clause only affects cases that 'involve[ ] review of an order of removal.'" Canal A Media Holding, LLC v. U.S. Citizenship & Immigr. Servs., 964 F.3d 1250, 1257 (11th Cir. 2020) (quoting Madu v. U.S. Att'y Gen., 470 F.3d 1362, 1367 (11th Cir. 2006)).

Here, Maryanovsky is not seeking to challenge the decision to seek removal or the process by which removability will be determined. Instead, as determined above, she is challenging ICE's failure to comply with its regulations when it revoked her OSUP. Thus, § 1252(b)(9) does not bar this Court's review of her claims.

### c. Merits of Count One

The Court finds that contrary to its regulations and procedure, ICE failed to provide Maryanovsky with notice and an informal interview to contest the revocation of her OSUP. Pursuant to 8 C.F.R. § 241.4(*l*)(1), DHS may take into custody an alien who violates the conditions of his OSUP. "Upon revocation [of an OSUP], the alien will be notified of the reasons for revocation of his or her release . . . [and] [t]he alien will be afforded an initial informal interview promptly after his or her return to Service custody to afford the alien an opportunity to respond to the reasons for revocation stated in the

notification." Id. And § 241.4(*l*)(2) permits revocation "in the exercise of discretion when, in the opinion of the revoking official":

    (i)    The purposes of release have been served;

    (ii)    The alien violates any condition of release;

    (iii)    It is appropriate to enforce a removal order or to commence removal proceedings against an alien; or

    (iv)    The conduct of the alien, or any other circumstance indicates that release would no longer be appropriate.

The notice and informal interview requirements appear in § 241.4(*l*)(1), but not § 241.4(*l*)(2). Nevertheless, most district courts have determined that § 241.4(*l*)(1)'s procedural requirements apply to revocation of an alien's OSUP pursuant to § 241.4(*l*)(2). See, e.g., Banega v. Warden of Soft Side S. Facility, No. 2:25-CV-1152-JES-DNF, 2026 WL 234042, at *4 (M.D. Fla. Jan. 29, 2026) (finding the notice and interview requirement detailed in § 241.4(*l*)(1) applies to revocations of OSUPs under § 241.4(*l*)(2)); Zhu v. Genalo, 798 F. Supp. 3d 400, 411–12 (S.D.N.Y. 2025) (same); Constantinovici v. Bondi, 806 F. Supp. 3d 1155, 1164 (S.D. Cal. 2025) (same). The Court finds the reasoning of those courts to be persuasive. But see Barrios v. Ripa, No. 1:25-CV-22644, 2025 WL 2280485, at *6 (S.D. Fla. Aug. 8, 2025) (finding, in the context of a motion for temporary restraining order, that the notice and interview requirements only apply to revocations under § 241.4(*l*)(1)).

8

Indeed, the regulation's text undermines Respondents' argument that § 241.4(*l*) sets forth two separate processes for revocation of an OSUP. The reasons for revocation detailed in § 241.4(*l*)(2) are inclusive of the single reason stated in § 241.4(*l*)(1)—violation of conditions of release. This overlap suggests a single procedure for the revocation of an OSUP regardless of whether or not release is revoked for a violation of an OSUP. Notably, contrary to Respondents' current position, the form Notice of Revocation of Release provided to Maryanovsky in this case also contemplates a single procedure. The form states that the Field Office Director exercised his discretion to revoke Maryanovsky's OSUP pursuant to § 241.4(l)(2) and she "will promptly be afforded an informal interview and the opportunity to respond to the reasons for the revocation . . . ." Doc. 14-1 at 2.

In addition, § 241.4(*l*)(3)—titled "[t]iming of review when release is revoked"—appears to apply to all aliens whose OSUP is revoked regardless of the reason for revocation, and provides that "[i]f the alien is not released from custody following the informal interview provided for in paragraph (*l*)(1) of this section, [ICE] shall schedule the review process in the case of an alien whose previous release" has been revoked. This provision implies that the informal interview required in §241.4(*l*)(1) applies to all aliens whose OSUP is revoked for any reason.

9

In this case, the record before the Court shows that ICE gave Maryanovsky neither notice of the reasons for the revocation of her OSUP nor an informal interview. Despite § 241.4(*l*)(1) requiring notice "[u]pon revocation," ICE failed to provide Maryanovsky with a Notice of Revocation of Release until January 21, 2026, over a month after ICE detained Maryanovsky and a day after the Court directed Respondents to file a supplemental response to the merits of the Petition. Doc. 14-1 at 2–3. Moreover, Respondents have submitted absolutely no evidence that they provided Maryanovksy with an informal interview. As such, the Court finds Maryanovsky's re-detention violated the regulations designed to afford her due process, and relief on Count One is due to be granted.

Because the Court will grant the Petition on the basis of Count One, it does not, and need not, address Maryanovsky's remaining claims. See Banks v. Dretke, 540 U.S. 668, 689 n.10 (2004) (declining to address an additional claim in a habeas petition after granting relief on another claim because "any relief [petitioner] could obtain on that claim would be cumulative").[2]

---

[2] Insofar as Maryanovsky, requests attorney's fees, she may make such a request in a separate motion, if appropriate. See Local Rule 7.01, United States District Court, Middle District of Florida. Any such motion must be supported by a memorandum of law.

10

Accordingly, it is **ORDERED**:

1. Maryanovsky's Petition for Writ of Habeas Corpus (Doc. 1) is **GRANTED** as to Count One. Respondents shall release Maryanovsky **within 24 hours of this Order**, and they shall facilitate her transportation from the detention facility by notifying her counsel when and where she can be collected. The Petition is otherwise **DENIED without prejudice** as moot.

2. Maryanovsky's request for a preliminary injunction (Doc. 3) is **DENIED as moot**.

3. The **Clerk** is directed to terminate any motions; enter judgment granting the Petition as to Count One; and close the file.

**DONE AND ORDERED** at Jacksonville, Florida, this 23rd day of February, 2026.

*Marcia Morales Howard*
MARCIA MORALES HOWARD
United States District Judge

Jax-9 2/23
c:
Counsel of Record